IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

RAFAEL VELEZ FONSECA

Debtor

_____

RAFAEL VELEZ FONSECA

Plaintiff

V.

GOVERNMENT EMPLOYEES ASSOCIATION (AEELA)

Defendant

CASE NO. 12-06148 (MCF)

CHAPTER 7

ADVERSARY CASE NO. 13-00184

FILED & ENTERED ON 05/07/2015

## **OPINION AND ORDER**

Before the Court are cross-motions for summary judgment and oppositions thereto in relation to the adversary proceeding filed by plaintiff, Rafael Velez Fonseca (hereafter "Plaintiff"), against defendant, the Commonwealth of Puerto Rico Government Employees Association (hereafter "AEELA"),[1] alleging violations of the discharge injunction under 11 U.S.C. § 524.[2]  For the reasons stated herein, AEELA's motion for summary judgment is granted and subsequently, Plaintiff's cross motion for summary judgment is denied.

### I – JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a) and the general order of the United States District Court dated July 19, 1984, which refers title 11

---

[1] Docket Nos. 18, 21 & 22, respectively.
[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

-1-

proceedings to the Bankruptcy Court (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

## II – MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. By agreement of the parties, this matter is appropriate for summary judgment disposition as there are no material facts in dispute and one of the parties is entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c), as made applicable to these proceedings by virtue of Fed. R. Bankr. P. 7056. Celotex v. Catrett, 477 U.S. 317 (1986)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

## III – UNDISPUTED MATERIAL FACTS

1. Plaintiff was a government employee and member of AEELA from 1986 until December 31, 2012.

2. On May 29, 2012, and on June 26, 2012, Plaintiff obtained two loans from AEELA.

3. On August 3, 2012, Plaintiff filed a voluntary bankruptcy petition under Chapter 7.

4. Plaintiff listed $18,457.76 in his savings and dividends accounts with AEELA as personal property in Schedule B.[3]

5. Plaintiff listed AEELA in Schedule D as having a claim for $27,400.64 that was partially secured by Plaintiff's savings and dividends accounts and partially unsecured for the remaining balance of $8,942.88.[4]

6. Plaintiff also listed a revolving credit account with AEELA in the amount of $1,086.00 as an unsecured non-priority debt in Schedule F.[5]

7. AEELA did not file a proof of claim in Plaintiff's bankruptcy case.

---

[3] Docket No. 1, legal case.
[4] Docket No. 1, legal case.
[5] Docket No. 1, legal case.

8. On September 12, 2012, the Chapter 7 Trustee filed a Report of No Distribution in the bankruptcy case, which was notified to creditors on September 13, 2012.[6]

9. On September 14, 2012, Plaintiff filed his petition for retirement from his position as an employee of the Municipality of Caguas.

10. On November 20, 2012, Plaintiff was granted a discharge under § 727 of the Bankruptcy Code.[7]

11. AEELA did not object to the order discharging the Plaintiff, nor did it object to the dischargeability of any specific debt.

12. The parties agree that the funds in the savings and dividends accounts served as collateral for the loans provided by AEELA to the Plaintiff. By agreement of the parties, AEELA collected the $18,457.76 available in Plaintiff's savings and dividends accounts as partial payment for its claims.

13. On December 31, 2012, Plaintiff officially retired from his position with the Municipality of Caguas.

14. On January 9, 2013, AEELA issued a written communication to the Municipality of Caguas' payroll department requesting Plaintiff's pre-bankruptcy balance of accumulated vacation and sick leave licenses and also indicating that Plaintiff had a pending debt balance of $7,611.68 (the "first letter"). The letter further added that no payment or deduction of any kind should be processed until authorized by the Bankruptcy Court.[8]

15. On January 15, 2013, the Human Resources Office of the Municipality of Caguas certified that up to the date of his retirement, Plaintiff had a balance of 40.87 days of accumulated vacation leave in excess of 13 days and 99.75 days of accumulated sick leave in excess 8 days.[9]

---

[6] Docket Nos. 9 & 10, legal case.

[7] Docket No. 14, legal case.

[8] Docket No. 1, adversary case.

[9] AEELA alleges that it holds a statutory lien over Plaintiff's pre-petition vacation and sick leave licenses. The 13 day excess in relation to vacation days and the 8 day excess in relation to sick days correspond to

16. On February 6, 2013, AEELA issued a second written communication to the Municipality of Caguas informing that Plaintiff's bankruptcy case had concluded and therefore, no authorization was required to withhold the payment of the $7,611.28 owed to AEELA, from the liquidation of Plaintiff's accumulated vacation and sick leave licenses (the "second letter").[10]

17. AEELA did not send any written communication to Plaintiff to collect the $7,611.28.

18. Neither AEELA nor Plaintiff has received any transfer of monies in relation to the vacation and sick leave licenses from the Municipality of Caguas.

## IV – PROCEDURAL HISTORY

1. On May 22, 2013, Plaintiff requested the reopening of his bankruptcy case in order to file the present adversary proceeding based on AEELA's alleged violation of the discharge injunction as a result of the two communications it sent to the Municipality of Caguas.[11]

2. On June 7, 2013, AEELA opposed Plaintiff's motion to reopen the bankruptcy case.[12]

3. On July 8, 2013, the Court granted Plaintiff's request to reopen his Chapter 7 bankruptcy case.[13]

4. Plaintiff filed his adversary complaint against AEELA for violation of the discharge injunction, pursuant to 11 U.S.C. § 524.[14]

5. On March 11, 2014, AEELA filed a motion for summary judgment (Docket No. 18).

---

the post-petition vacation leave and sick leave accumulated from the date of the filing of the Chapter 7 bankruptcy on August 3, 2012, until the day that Plaintiff retired on December 31, 2012.

[10] Docket No. 1, adversary case.
[11] Docket No. 18, legal case.
[12] Docket No. 19, legal case
[13] Docket No. 21, legal case.
[14] Docket No. 1, adversary case.

-4-

6. On March 25, 2014, Plaintiff filed his opposition to AEELA's motion for summary judgment and filed his own cross motion for summary judgment (Docket Nos. 21 & 22).

7. On January 14, 2015, an oral argument was held whereby the parties agreed that there are no disputed material facts that prevent the Court from entering summary judgment.[15]

8. On January 27, 2015, AEELA submitted the Spanish and English versions of Law No. 133 of June 28, 1966 and the Spanish version of Law No. 9 of April 25, 2013.[16]

9. On March 9, 2015, AEELA provided the English translation of Law No. 9 of April 25, 2013.[17]

V – PARTIES' CONTENTIONS

A - Plaintiff's Position

Plaintiff alleges that AEELA violated the discharge injunction set forth by § 524 of the Bankruptcy Code by sending two letters to the Municipality of Caguas, Plaintiff's former employer, after a discharge order had been entered in his Chapter 7 bankruptcy case. Plaintiff claims that both letters violated the discharge injunction, inasmuch as they relate to the collection of a discharged debt. Plaintiff argues that the first letter recognized the existence of a debt of $7,611.28 and instructed the Municipality of Caguas to refrain from making any liquidation or deduction of vacation and sick leave licenses accumulated because he filed a bankruptcy petition. The second letter informs the Municipality of Caguas that the Plaintiff's bankruptcy case has concluded and they are now authorized to withhold $7,611.28 from the liquidation of his accumulated sick and vacation leave licenses. He adds that AEELA was properly notified of the bankruptcy petition and of the discharge order. Although he accepts that AEELA's communications were not sent to him, Plaintiff states that AEELA's actions have

---

[15] Docket No. 44, adversary case.
[16] Docket No. 46, adversary case.
[17] Docket No. 49, adversary case.

prevented him from collecting monies he is entitled to, since he has been unable to obtain the liquidation of his vacation and sick leave licenses.

Plaintiff recognizes that AEELA has a statutory lien that secures the loans granted to him. Nevertheless, he contends that the statutory lien only extends to his savings and dividends accounts because it was the only collateral available to collect from at the time of the bankruptcy filing. Plaintiff argues that AEELA's statutory lien did not extend to the vacation and sick leave licenses liquidation because such lien had not been created or perfected prior to the filing of the bankruptcy petition. Plaintiff claims that there are three requirements in order for AEELA's statutory lien to attach to the accumulated vacation and sick leave licenses of its members. These three requirements are: (1) that the member has ceased his employment permanently; (2) that the employee has a debt with AEELA at that time and (3) that the available funds have not been alienated by the employee's retirement system. After the discharge order was entered on November 20, 2012, Plaintiff no longer owed AEELA any monies on account of such loans. According to Plaintiff's position, AEELA's statutory lien was conceived after his retirement on December 31, 2012, after the discharge order had been entered. Therefore, the three requirements are not met because at the moment he retired, there was no existing personal debt with AEELA that could be attached. Plaintiff asserts that his position has been consistent since the inception of the bankruptcy case as reflected in his Chapter 7 schedules whereby AEELA's claims were partially secured and partially unsecured. AEELA did not object to this classification of its claim and it did not file a proof of claim. Once AEELA collected the $18,457.76 in Plaintiff's savings and dividends accounts, the remaining balance did not have any collateral to secure the debt. Consequently, after deducting the amounts from the savings and dividends accounts the remaining debt balance was unsecured and subject to discharge pursuant to § 524.

B- AEELA's Position

In its motion for summary judgment, AEELA asserts that it has not incurred in any act "in personam" against Plaintiff that would constitute civil contempt and thus a violation of

-6-

discharge.  AEELA maintains that the two communications were sent to the Municipality of Caguas, not to Debtor, and that those communications were part of the obligatory procedure undertaken after a member has retired and that the letters were not intended to coerce, collect or harass the Plaintiff.

AEELA argues that its claim is secured by a statutory lien that rides through the bankruptcy unaffected, unless modified or avoided. Since AEELA had a secured claim, it was not required to file a proof of claim in the bankruptcy case or object to Plaintiff's classification of its claims. AEELA contends that vacation and sick leave licenses are one of various guarantees that secure the loans granted to its members by virtue of local law.  It adds that this statutory lien is perfected upon the execution of the loan agreement and no other perfection requirement is necessary.  Accordingly, the order of discharge had the effect of eliminating the "in personam" liability against Plaintiff, but did not affect AEELA's right to proceed "in rem" against its collateral, which includes vacation and sick leave licenses liquidation by operation of local law.  Nevertheless, based on the case of In re Rivera Feliciano, 111 B.R. 380 (Bankr. D.P.R. 1990), AEELA purports that it is only entitled to the pre-petition accumulated days for vacation and sick leave licenses. Any benefit derived from post-petition accumulation of vacation and sick leave licenses would therefore belong to the Plaintiff.

VI – LEGAL ANALYSIS

A-  Chapter 7 Discharge

Pursuant to § 727(b) of the Bankruptcy Code, a discharge releases a Chapter 7 debtor from all personal liabilities that arose pre-petition, subject to the exemptions from discharge included in § 523.  It is undisputed that a discharge order was entered in favor of the Plaintiff in his Chapter 7 bankruptcy case.  It is also undisputed that there are no objections to discharge or requests to revoke the discharge filed in the bankruptcy case.  As a result, Plaintiff's pre-petition personal debts have been discharged.  Notwithstanding, as a general rule, secured claims are not

affected by the discharge order and creditors may collect on such debts by foreclosing on the available collateral "in rem." Johnson v. Home State Bank, 501 U.S. 78, 82 (1991).

B- Violation of discharge injunction

The general consequences and effects of a discharge entered in favor a debtor that has fulfilled all his bankruptcy obligations can be found in § 524 of the Bankruptcy Code. In its relevant parts, § 524(a)(2) provides:

> (a) A discharge in a case under this title—
>
> …
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(2).

A discharge operates as an injunction against an act, including letters and personal contacts, to collect, recover or offset any discharged debt as a personal liability of the debtor. 4-524 Collier on Bankruptcy ¶ 524.01. As a result, any attempt to collect on a personal debt that has been discharged is prohibited and may be considered a violation of the discharge injunction under § 524. "A creditor violates the discharge injunction when it (1) has notice of the debtor's discharge; (2) intended the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." Lumb v. Cimenian (In re Lumb), 401 B.R. 1 (B.A.P. 1st Cir. 2009). Generally, the applicable sanction for a violation of the discharge injunction is civil contempt under the bankruptcy court's statutory authority, pursuant to 11 U.S.C. § 105. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000). Accordingly, the court's contempt powers under § 105 may be used to enforce a discharge injunction as well as grant monetary relief if the creditor acted willfully. Bessette, 230 F.3d at 445; Hardy by & Through IRS v. United States (In re Hardy), 97 F.3d 1384 (11th Cir. 1996). A creditor's actions in violation of the discharge injunction are willful if the creditor knows the discharge has been entered and intends the actions which violate the discharge injunction. Hardy, 97 F.3d at 1390.

-8-

Unlike personal debts, secured claims may be able to ride through bankruptcy unaffected by the discharge injunction. In <u>Johnson</u>, 501 U.S. 82-83, the United States Supreme Court determined that a creditor's right to foreclose on a lien survives bankruptcy notwithstanding the discharge of personal liability. To the extent liens are not avoided, paid or otherwise eliminated as part of the bankruptcy case, congressional intent is clear that valid liens may be enforced. Colliers 4-524 Collier on Bankruptcy ¶ 524.02.

Plaintiff alleges that the two letters that AEELA sent to the Municipality of Caguas constitute a violation of the discharge injunction because it knew that a discharge order had been entered and it is trying to collect on a personal pre-petition debt that has been discharged. AEELA proffers that the two letters sent to the Municipality of Caguas were an inter-agency communication prompted by Plaintiff's decision to retire, not a willful violation of the discharge injunction. AEELA also argues that it has a statutory lien by virtue of local law that rides through bankruptcy and it is trying to foreclose on its collateral, not collect on an unsecured personal debt.

To the resolve the issue at hand, we first must determine whether AEELA has a secured claim that survives the discharge order in order to consider whether it has violated the discharge injunction for sending the two letters to the Municipality of Caguas.

C-  <u>Statutory Liens as defined by § 101(53)</u>

Section 101(53) of the Bankruptcy Code defines statutory lien as follows:

> the term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53).

According to the Bankruptcy Code definition, AEELA proclaims that the loans it provides to its members are secured solely by force of several statutes which would qualify as a statutory lien. On the other hand, Plaintiff asserts that there is no statutory lien that encumbers his unliquidated

vacation and sick leave licenses. Alternatively, if local law provides for the creation of a statutory lien, the specified circumstances or conditions required for the creation of such lien have not been met in this case.

Puerto Rico Law No. 133 of June 28, 1966, known as the "Puerto Rico Commonwealth Employees Association Act," provides for AEELA's powers and authority to comply with the purposes of its creation. 3 PR Laws Ann. § 862, et seq.[18] According to article 2 of P.R. Law No. 133, amongst the many purposes of the association are to stimulate savings among employees, grant loans and seek the financial betterment and progress of its members.[19] Article 7(a) of P.R. Law No. 133 specifically grants the association the power to grant personal loans to members, with such security and margin as established by regulation. It also empowers the association to deduct any sum owed to AEELA from the savings and contributions of any employee who is permanently separated from service.[20] Article 7(a) of P.R. Law 133 in its relevant parts states:

> The Board of Directors shall have all the powers that are necessary and convenient to achieve the purposes of the Association, including, without being construed as a limitation, the following:
>
> (a) To grant personal loans to the employees and pensioned members at an interest rate approved by the Board of Directors, which shall not exceed seven percent (7% ) per annum, with such security and margin, and under such amortization terms as established by regulations. The Association is also empowered to grant mortgage loans pursuant to the norms and requirements of the secondary mortgage markets of the United States and Puerto Rico, and the applicable federal and local laws, always seeking the best possible financing options for its members. The Association and the retirement systems sponsored by the Government of the Commonwealth of Puerto Rico are hereby empowered to deduct from the savings and contributions of those employees who have been

[18] P.R. Law No. 9 of April 24, 2013, known as the new "Commonwealth of Puerto Rico Employee Association Act of 2013," repealed P.R. Law No. 133 of June 28, 1966. Nevertheless, the applicable law at the time of Plaintiff's bankruptcy filing in September 2012 and at his retirement in December 2012 was Law No. 133 of June 28, 1966. Although the sections and numbers have been reorganized, the text of the law as pertinent to our case survived largely unaltered in the new law. As a result, the conclusions of the Court would survive under either version of the law.

[19] 3 PR Laws Ann. § 862b.

[20] Id.

> permanently separated from service from any reason, all sums they may owe to the Association, as well as all public employees retirement systems to deduct from the pensions the monthly amortizations to be credited to the loans granted. In those cases that the employee has a debt with the Association and any retirement system, the savings and contributions that the employee may have in the respective organization shall answer, in the first place, for outstanding obligations contracted with the respective body. Should the savings and contributions exceed the total amount of said obligations, the balance shall be used to amortize the obligations incurred by the employee with the Association or retirement system, as the case may be.

3 PR Laws Ann. § 862f.

Article 7(a) of P.R. Law No. 133 leaves no doubt that AEELA is empowered to give loans to its members and use their savings and contributions as collateral for any unpaid debt, upon a member's permanent separation from employment. It is evident that a member's loans with AEELA are secured by the collateral mentioned in article 7 of P.R. Law 133, including their savings and contributions. This lien arises solely by force of such statute and would therefore qualify as a statutory lien as defined by §101(53) of the Bankruptcy Code. Pursuant to article 7 of P.R. Law No. 133, Plaintiff recognized that AEELA had a statutory lien secured by the $18,457.76 available in his savings and dividends accounts at the time of his bankruptcy filing and agreed to the retention and transfer of the complete balance to AEELA as partial payment for the debt. Up to this point, there is no disagreement between the parties.

Having exhausted the monies in Plaintiff's savings and dividends accounts, AEELA seeks additional collateral to collect on its alleged secured claim. Plaintiff alleges that his savings and dividends accounts were the only collateral available for AEELA to foreclose on or retain. AEELA rebuts these arguments alleging that its guarantees extend to additional assets other than the savings and dividends accounts. We must therefore explore whether P.R. Law No. 133 provides for additional guarantees, such as accumulated leave balances, to secure the loans it grants its members.

Article 31 of P.R. Law No. 133 controls the deductions allowed for the payment of debt incurred by AEELA's members as follows:

> Any credit, deposit or surplus, for any reason, in the Commonwealth Government, or in any dependency or instrumentality thereof, in behalf of a member who, having ceased in office, is in debt with the Association, shall be retained by the Secretary of the Treasury of Puerto Rico or the competent officer, if not alienated in the corresponding retirement system, and covered into the funds of the Association, partially or fully to pay the debt pending therewith.

3 PR Laws Ann. § 863d.

Pursuant to the text of such article, any credit, deposit or surplus in the government, not alienated for the member's retirement system, shall be deducted to pay off any outstanding debt upon separation from office.  The language of this section of the law is ample and broad. Generally, it allows AEELA to recover from any asset in the government to pay off the debt of its members, unless these assets have been earmarked for another purpose, not applicable to our case.  It seems evident that the statutory lien created by this section of the law extends well beyond Plaintiff's savings and dividends accounts to "any credit, deposit or surplus." Consequently, we must examine whether Plaintiff is allowed to accumulate vacation and sick leave licenses under his government position that can be considered a credit, deposit or surplus in the Commonwealth Government subject to the deductions and transfers allowed by article 31 of P.R. Law No. 133.

P.R. Law No. 125 of June 10, 1967, governs the lump sum payment of accumulated leave licenses. 3 PR Laws Ann. § 703.  Article 1 of P.R. Law 125 in its relevant parts provides:

> Every officer or employee of the Commonwealth of Puerto Rico, except the officers of the Executive Branch appointed by the Governor and of the instrumentalities and public corporations shall be entitled to be paid, and there shall be paid a lump sum of money for the leaves of absence he may have accumulated up to a maximum of sixty (60) working days on his removal from service for any cause; and for sick leave he may have accumulated up to a maximum of ninety (90) working days, on his removal from service in order to avail himself of a retirement, if he is a participant of any retirement system sponsored by the Government and if he is not, on his final removal from service, if he has rendered at least ten (10) years of services. This lump sum for both leaves shall be paid at the rate of the salary earned by the officer or employee at the time of his removal from

service, independently of the days he has enjoyed said leaves during the year.

3 PR Laws Ann. § 703a.

The text of this article allows for government employees, such as Plaintiff, to accumulate up to sixty days of leave for vacation and up to ninety days of sick leave to be paid as lump sum upon retirement. Upon separation from office due to retirement, the leave balances are liquidated in a lump sum payment based on the last salary earned by the retiree. In turn, article 5 of P.R. Law No. 125 specifically addresses the issue of vacation and sick leave licenses as payment for loans granted by AEELA to its members. Article 5 of P.R. Law No. 125 reads:

> The lump payment authorized by §§ 703-703e of this title shall not be subject to deductions by reason of savings and contributions to the retirement systems of government employees, but shall be subject to other deductions authorized by law, such as obligations of taxable nature and those voluntarily incurred by the officer or employee by reason of loans from the Employees Association, the government retirement systems or the credit cooperative associations of public employees or deduction for affiliation fees to employees associations authorized by law.

3 PR Laws Ann. § 703d (emphasis added).

It is patent that the accumulated vacation and sick leave lump sum payment authorized by P.R. Law 125 is subject to deductions for the payment of loans voluntarily incurred by AEELA's members. As previously mentioned, P.R. Law No. 133, allows for any credit, deposit or surplus in the government to be retained and transferred to AEELA for payment of its debts. Outside of bankruptcy, the lump sum payment of accumulated leave licenses would certainly be considered a credit, deposit or surplus in the government as generally provided by P.R. Law No. 133. Moreover, article 5 of P.R. Law No. 125 specifically points out that the lump sum payment for the liquidation of accumulated vacation and sick leave licenses can be withheld to respond for a member's unpaid debt with AEELA.

Based on Fleet Credit Corp. v. TML Bus Sales, Inc., 65 F.3d 119, 122 (9th Cir. 1995), Plaintiff argues that "a lien created by statute is limited in operation and extent to the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in

the statute."[21] Plaintiff claims that the retention allowed by P.R. Law No. 133 is dependent on three conditions: (1) the member must have ceased office, (2) the member must owe a debt to AEELA and, (3) the credit deposit or surplus must not have been alienated for other purposes as allowed by the law. As such, he believes that a necessary element for any statutory lien to be created or perfected over vacation and sick leave licenses is that the member be retired. Plaintiff states that the statutory lien over his vacation and sick leave had not been perfected prior to the entry of discharge because his accumulated leave balance was not a liquid tangible asset until his retirement. As a result of this, any statutory lien over Plaintiff's vacation and sick leave licenses could only arise after his retirement on December 31, 2013, and AEELA could not enforce a statutory lien for payment of a discharged debt. Since perfection of the lien can only occur after retirement, any post-petition perfection of the lien is void and may possibly be a discharge injunction in itself.

Plaintiff states that AEELA can pursue any post-discharge lien enforcement only if it has a valid existing lien at the petition date. Plaintiff reasons that AEELA's statutory lien had been perfected on the monies in his savings and dividends account because they were a tangible existing asset at the time of the bankruptcy filing. When it pertains to the leave licenses, Plaintiff insists that a three prong test must be satisfied to have a perfected statutory lien. Nevertheless, Plaintiff does not apply those requirements to the alleged perfection of the statutory lien over the savings and dividends accounts. Plaintiff does not state when this lien was perfected nor does it mention what additional requirements were met for its perfection with respect to the savings and dividends accounts. Plaintiff's position is conflicting since he does not explain why these alleged perfection requirements are necessary to perfect a lien over his leave licenses but are not required to perfect a lien over its savings and dividends accounts. If Plaintiff's theory held true and retirement was the triggering event for statutory lien creation and perfection, the monies held in his savings and dividends accounts would also be considered an

---

[21] Docket No. 21, at 4, adversary case.

-14-

unsecured personal debt until his retirement.[22] As a result, Plaintiff's position that AEELA's statutory lien has been perfected over one type of collateral and not the other is self-serving and inconsistent because both are subject to the same conditions imposed by law, namely; permanent separation from the government position, having an existing debt with AEELA and available collateral is not earmarked for another purpose.

Plaintiff relies on three cases In re Pierce, In re Hanson and In re Claussen to support his argument that AEELA's statutory lien is not perfected.[23]   Nevertheless, Plaintiff fails to acknowledge that those cases required additional perfection requisites derived from applicable state laws, in order for the respective liens to attach to the collateral.[24] Plaintiff has not presented any legal authority to substantiate that a further perfection requirement is necessary for AEELA's statutory lien to attach to all the assets in possession of the government.  The Court has not been able to identify any section of the laws applicable to our case[25] that require further action from AEELA in order to perfect its statutory liens over any credit, deposit or surplus other than disbursing the loan itself.  The fact that the liquidation of some accumulated benefits cannot take place until after retirement does not mean that AEELA's debts are not secured by those credits, deposits or surplus until the employee is separated from work.  This is a public policy measure undertaken for the benefit of AEELA and its members, not an

---

[22]  Article 31 of P.R. Law 133 states that AEELA is "empowered to deduct from the savings and contributions of employees who have been permanently separated from service for any reason all sums they may owe the association."  3 PR Laws Ann. § 862f (emphasis added). Article 5 of P.R. Law 125 states that "the lump sum payment… shall be subject to deductions authorized by law such as obligations…voluntarily incurred by the officer or employee by reason of loans from the Employee association."  PR Laws Ann. § 703d.

[23]  In re Pierce, 809 F.2d 1356 (8th Cir. 1987)(Lien for attorney's fees was not perfected since no notice of the lien was filed pre-petition as required by local law); In re Hanson, 164 B.R. 632 (Bankr. D.S.D. 1994)(Lake County' statutory poor lien was not perfected over the reimbursement it paid to a hospital for unpaid services provided to a Chapter 7 debtor because the statutory lien was filed after the entry of discharge). In re Claussen, 118 B.R. 1009 (Bankr. D.S.D. 1990)(Brookings County's statutory lien for payment of emergency services provided to a Chapter 7 debtor's indigent wife was dischargeable because the indigent emergency medical services lien was not filed, and thus, perfected pre-petition).

[24]  Pierce, 809 F.2d 1356 (Minnesota law specifically requires the filing of notice of lien to obtain an attorney's lien); Hanson, 164 B.R. 632 and Claussen, 118 B.R. 1009 (In both cases South Dakota law required the filing of the statutory lien as a requisite for lien perfection).

[25]  3 PR Laws Ann. § 862, et seq., PR Laws Ann. § 703, et seq.

additional perfection requirement. Consequently, at the moment the member voluntarily decides to obtain a loan from AEELA, a statutory lien attaches to all credits, deposits or surplus including the lump sum liquidation of vacation and sick leave licenses.

Since AEELA has a valid statutory lien that secures the loans provided to the Plaintiff, it is allowed to proceed against the collateral to collect on its claim up to the amount of collateral available. The two letters sent by AEELA to the Municipality of Caguas clearly stated that they were not an attempt to collect on plaintiffs' personal debts but to collect against the collateral "in rem." The fact that AEELA had notice of the entry of discharge is inconsequential since it would not bar AEELA from acting as it did. Therefore, AEELA's actions did not violate the discharge injunction and it may proceed "in rem" against the collateral that secures its debts but limited to the amounts of its collateral since Plaintiff's personal debts have been discharged.

In view of the foregoing, the Court grants AEELA's motion for summary judgment and denies Plaintiff's cross-motion for summary judgment.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of May, 2015.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge